COMMONWEALTH *vs.* TERRANCE ELAM.

Suffolk. February 5, 1992. - May 7, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Firearms. Evidence*, Other offense. *Practice, Criminal*, Cross-examination by prosecutor, Argument by prosecutor, Instructions to jury. *Constitutional Law*, Assistance of counsel. *Due Process of Law*, Delay in appeal.

At the trial of a defendant charged with carrying a firearm without a license, evidence that a different weapon, allegedly carried by a codefendant, had been fired into a house was properly admitted to rebut certain evidence of the defendants and to prove two elements of the charge, namely, that the codefendant's weapon was an operable firearm and that the defendants had moved the firearms from one place to another. [585-586]

At a criminal trial, the prosecutor's questions on cross-examination occasioned no prejudicial error. [586-587]

At a criminal trial, any possible prejudice resulting from the prosecutor's closing argument was dispelled by the judge's curative instuctions. [587]

At a criminal trial, the judge correctly instructed the jury on identification, including the issue of misidentification; an additional instruction on good faith mistake in identification was not required. [587]

A criminal defendant was not deprived of the effective assistance of counsel, where the conduct of his trial counsel did not cause him to lose any substantial ground of defense. [587-588]

Where no prejudice resulted from delay in a criminal defendant's nonmeritorious appeal, he was not entitled to remedial action by this court. [588]

INDICTMENT found and returned in the Superior Court Department on July 26, 1989.

The case was tried before *Guy Volterra*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth J. King* for the defendant.

*Frank J. Santisi*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Terrance Elam, was indicted for carrying a firearm without a license. G. L. c. 269, § 10 (1990 ed.). A jury returned a verdict of guilty,[1] and the defendant appealed, arguing that the prosecutor deprived him of a fair trial by: (a) introducing irrelevant, highly prejudicial evidence; (b) improperly cross-examining the defendant and his codefendant; and (c) making improper closing argument. The defendant further argues that the trial judge committed reversible error by refusing to charge the jury on good faith mistake in identification; that the defendant was deprived of the effective assistance of counsel at his trial; and that the defendant has been deprived of his right to a speedy and effective appeal. We took the case on our own motion and affirm.

The jury could have found the following facts from evidence introduced at the trial. In the early morning hours of July 13, 1989, two Boston police officers heard shots which they believed were coming from a high-powered rifle in the area of Babson Street and Faunce Road in the Mattapan section of Boston. The officers saw two men on Faunce Road. One man, identified by one of the officers as the codefendant, was seen carrying an AK47 assault rifle, which was recovered after the officer chased the man.[2] The man identified as the defendant was carrying a silver handgun. He was pursued by the other officer. The defendant climbed a fence and discarded the weapon, later discovered to be a .357 Smith & Wesson handgun. At first both men eluded the officers, who then took up a position next to some bushes. About fifteen minutes later, they heard voices from the roof of 17 Faunce

---

[1] The defendant was tried with Sethe Deutch, his best friend, who was also charged with carrying a firearm without a license. Guilty verdicts were returned as to both defendants. The codefendant is not a party to this appeal.

[2] Shell casings were later recovered across the street from 111 Babson Street, and two spent bullets were found in the house. Testimony linked the casings and the bullets to the AK47.

Road. When the officers approached, the defendant "dove head first through" a closed window into the bathroom of 17 Faunce Road. He was arrested by the police after they entered the house. The codefendant was also arrested after he jumped off the roof.

1.. *Fair trial.* We deal first with the defendant's arguments that he was deprived of a fair trial.

a. *Evidence.* The prosecutor introduced evidence that the AK47, allegedly carried by the codefendant, had been fired into a house at 111 Babson Street in Mattapan. See note 2, *supra.* The defendant argues that such evidence was wholly irrelevant to the charge against him, was unduly prejudicial to him, and was introduced to prove bad character.[3] Defense counsel did not object at trial to the introduction of evidence relating to the shooting. In the absence of an objection, we review the evidence to determine whether there has been a substantial risk of a miscarriage of justice. *Commonwealth* v. *Wood*, 380 Mass. 545, 547 (1980). *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). None occurred in this case.

Evidence of other crimes is, of course, not admissible for the purpose of proving bad character or a propensity to commit crimes. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372 (1978). "If, however, such evidence is relevant for some other purpose, it is not rendered inadmissible merely because it indicates the possible commission of another offense." *Commonwealth* v. *Bradshaw, supra.* The Commonwealth contends that the evidence was introduced (a) to rebut the defendants' evidence — that others[4] had been responsible for the crimes charged (carrying firearms), and that the defendants had been targets of shooting in the area; and (b) to

---

[3]The defendant did not then and does not now argue that his trial should have been severed from the codefendant's so as to avoid the prejudicial confusion of which he now complains.

[4]The defendants introduced evidence of multiple shootings in the area during the early morning hours of July 13. In addition, defense counsel mentioned the 111 Babson Street address first, during cross-examination of a prosecution witness.

prove two elements of the charge — that the AK47 was an operable firearm and that the defendants had moved the firearms from one place to another. The evidence was relevant on these issues and was properly admitted.

b. *Cross-examination.* The defendant argues that the prosecutor required the defendant to comment on the veracity of another witness.[5] The prosecutor's question was improper. *Commonwealth* v. *Triplett,* 398 Mass. 561, 567 (1986). "It is a fundamental principle that 'a witness cannot be asked to assess the credibility of his testimony or that of other witnesses' " (citations omitted). *Id.* The error was not, however, prejudicial. The defendant, in response to the single improper question, did not characterize the witness's testimony as either truthful or false, but rather explained what he intended to convey by his words to her. See *Commonwealth* v. *Johnson, ante* 318, 327-328 (1992); *Commonwealth* v. *Ward,* 15 Mass. App. Ct. 400, 402 (1983).

The defendant argues that, when the prosecutor asked on cross-examination whether the group that the defendant associated with had a name, that unfairly suggested that the defendants were gang members. Although the judge sustained defense counsel's objection and instructed the jury to disregard the questions, the witness answered, "No." To argue that the defendant is entitled to a new trial based on this exchange borders on the frivolous. In addition, the defendant argues that the prosecutor's questions emphasized general public safety considerations without developing any probative evidence. It is not necessary for us to discuss each of the defendant's claims in detail. There was no error. On cross-ex-

---

[5]The following colloquy is at issue:

THE PROSECUTOR: "And at some point, while you were in the house, you called out, 'Ma. Ma.' didn't you?"

THE DEFENDANT: "No. I told them to call my mother."

THE PROSECUTOR: "You heard [the witness] testify that you called out, 'Ma. Ma.' You heard that. Right?"

THE DEFENDANT: "Yes, I did."

THE PROSECUTOR: "She must have been lying. Right?"

THE DEFENDANT: "No, I wouldn't say that. She heard me saying 'Ma, Ma' as that they knew me and to call my mother."

amination, the prosecutor properly emphasized the residential nature of the area to rebut the defense that the codefendant was hiding, not from the police, but from persons trying to shoot him, and to suggest that he could have sought assistance from the residents.

c. *Closing argument.* The defendant argues that the prosecutor's closing argument unduly emphasized the themes of public safety and the shooting at 111 Babson Street, and inflamed the passions of the jury. The evidence with respect to 111 Babson Street was properly admitted. The prosecutor's references to war-torn countries, however, was improper. Any possible prejudice was dispelled by the judge's curative instruction to the jury that they should disregard those references completely. Defense counsel stated their satisfaction with the curative instructions.

2. *Good faith mistake in identification.* The defendant argues that the judge committed reversible error when he refused to charge the jury on the possibility of a good faith mistake in identification. Counsel for the defendant neither requested the charge, nor objected to the judge's refusal to give it, although counsel for the codefendant did both.

No error occurred. The judge's instructions on identification track the model instructions we set out in the appendix of *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), taken from *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972). The judge's charge clearly alerted the jury to the issue of misidentification. The instructions fully informed the jurors of their duty to find the defendants guilty beyond a reasonable doubt and emphasized the Commonwealth's burden of proof. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 266 (1983). Defense counsel ably cross-examined the officers. As the defendant states, his closing argument put the defense of good faith mistake in the officers' identifications before the jury. An additional instruction on good faith mistake in identification was not required.

3. *Effective assistance of counsel.* The defendant argues that the failure of trial counsel to join in the request for an instruction on good faith mistake in identification testimony,

or to object to the evidence of the shooting on Babson Street, or to request a limiting instruction, was error which deprived the defendant of the effective assistance of counsel. In examining claims that trial counsel was ineffective, we determine "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Thomas*, 399 Mass. 165, 169 (1987), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Our previous review of these claims demonstrates that the defendant was not deprived of a substantial ground of defense. The claim of ineffective assistance of counsel adds nothing new.

4. *Right to speedy and effective appeal.* The defendant argues that, because appellate counsel was not appointed until approximately thirteen months after his trial counsel withdrew, he has been deprived of his right to a speedy and effective appeal. The defendant does not demonstrate any prejudice. Rather, he argues that, because his appeal will not be decided until well after his parole eligibility and that he was blameless for the delay, a reversal of his conviction should be ordered and retrial should be barred. The delay is attributable to the backlog in the appointment of private counsel to represent indigent defendants on appeal. Be that as it may, a delay of the appeal of thirteen months caused by the failure to appoint appellate counsel is difficult to justify. Had any prejudice been shown to arise out of a delay of this magnitude, we might have been compelled to order remedial action. Here, no such action is required. As we stated in *Commonwealth* v. *Duhamel*, 391 Mass. 841, 847 (1984), "Given our holding that trial counsel was not ineffective, it would be strange indeed if we said that delay in processing the defendant's nonmeritorious appeal warrants reversal of his convictions."

*Judgment affirmed.*