## COMMONWEALTH *vs.* NAPIER TRAYLOR.

No. 95-P-1737.

Middlesex. April 10, 1997. - July 24, 1997.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

*Evidence,* Cross-examination, Bias of government witness, Credibility of witness. *Witness,* Bias, Credibility. *Practice, Criminal,* Instructions to jury, Argument by prosecutor. *Intoxication. Intent. Identification.*

At the trial of a criminal case, the judge did not abuse her discretion in limiting cross-examination of the defendant's accomplice with respect to her exact sentence and length of probation, where the jury were aware that the accomplice had pleaded guilty, been sentenced and served time, and was on probation, and more precise data would not have affected the jury's evaluation of her credibility. [242-243]

At the trial of indictments for robbery and kidnapping, the defendant failed to make a timely written request pursuant to Mass.R.Crim.P. 24(b) for an instruction on the effects of alcohol consumption on the ability to formulate specific intent [243-244]; in any event, there was no live jury issue on the defendant's possible impairment due to alcohol consumption and the judge's refusal to grant the defendant's oral request for such an instruction did not prejudice the defendant's case [244-245]; and finally, the judge's clear instructions on the Commonwealth's burden of proof rendered harmless any error in not instructing on intoxication [245].

At the trial of a criminal case, the prosecutor's remarks about the demeanor of the Commonwealth's witnesses on the stand was a proper argument in support of the witnesses' credibility and did not constitute an expression of her own personal opinion. [246]

At the trial of indictments, the judge was not required to specifically instruct the jury, on her own motion, on the possibility of an honest but mistaken identification; further, the judge's charge on the issue of identification was correct and left the jury with the option to find that the witnesses were honestly mistaken in identifying the defendant. [247]

INDICTMENTS found and returned in the Superior Court Department on November 25, 1992.

The cases were tried before *Martha B. Sosman,* J.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Judith B. Stephenson*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. The defendant was convicted by a Superior Court jury of two counts of armed robbery (G. L. c. 265, § 17), two counts of kidnapping (G. L. c. 265, § 26), one count of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A[b]), and one count of assault by means of a dangerous weapon (G. L. c. 265, § 15B[b]).[1] His alleged accomplice in the crimes, Laguneng Gates, testified against him at trial. The two victims, Eryn Johnson and Sunil Gandhi, also testified for the Commonwealth. Both positively identified the defendant as their assailant. On appeal, the defendant argues that the judge unduly restricted his cross-examination of Gates for the purpose of showing bias. He also claims that the judge's failure to instruct the jury on the law of intoxication as it affects the ability to formulate specific intent was error. Finally, he maintains that certain remarks made by the prosecutor during her closing argument, combined with the judge's failure to give an instruction on honest but mistaken identification, require reversal. We affirm.

Sometime around 1:15 A.M. on October 18, 1992, Johnson and Gandhi were approached by a man and woman as they returned to Gandhi's automobile, which was parked inside the Alewife Massachusetts Bay Transportation Authority (MBTA) parking garage. One of the individuals asked for a ride. When Johnson and Gandhi refused, the woman, later identified as Gates, threatened Johnson with a large hunting knife and forced her into the car. Gates also rifled through Johnson's purse and removed thirteen dollars, while her companion searched Gandhi's wallet. What followed was a terrifying adventure through Cambridge and the Dorchester section of Boston, during the course of which Johnson and Gandhi were forced to withdraw money from their bank accounts via automatic teller machines and were robbed, threatened, and physically and verbally assaulted.

Eventually, Gates drove Gandhi's car to the Ashmont MBTA Station in Dorchester and dropped off her accomplice. She subsequently drove to the Orchard Park housing project, where she attempted to purchase drugs from an individual known as

---

[1]The convictions of assault and battery by means of a dangerous weapon and assault by means of a dangerous weapon were placed on file and therefore are not part of this appeal.

Tyrone, and, shortly thereafter, released Johnson and Gandhi, directing them toward Cambridge. The entire ordeal lasted somewhere between one and one-half and two hours.

Gates was arrested the following day, after one of her fingerprints was found inside Gandhi's car. She confessed to her involvement in the crime immediately and identified her accomplice as "Short," a man she claimed to have met on the night of October 17, at a party in Cambridge. Further investigation led police to David Thomas, an acquaintance of the defendant, and, eventually, to the defendant. When he was initially interviewed, the defendant identified himself as Pierre Green and gave a false date of birth. He denied any involvement in the crimes and cut short the interview. On the basis of additional information obtained from Thomas and Gates, Gandhi was shown a photo array containing the defendant's picture. He positively identified the defendant as his assailant.[2]

*Inquiry as to bias.* Gates was on probation at the time of trial.[3] She identified the defendant as her accomplice in the crimes and testified that she had previously pleaded guilty and served her sentence with respect to her involvement. She further stated that she had not been promised anything in exchange for her testimony but was testifying "[b]ecause what I did was wrong and I had a codefendant and what he did was wrong, also, and I do feel as if he should pay society, just like I did." The defendant took the stand and denied any involvement in the crimes, claiming instead that he sometimes used the name Tyrone and was, in fact, the individual from whom Gates had attempted to purchase drugs on October 18, 1992.

Gates was recalled in rebuttal. She testified that she did not see the defendant in Orchard Park on October 18, did not refer to him as Tyrone, and did not hear anyone else call him Tyrone. On recross-examination, defense counsel asked Gates about the disposition of the charges brought against her as a result of her

---

[2]Gandhi had previously been shown an array that did not contain the defendant's picture and had told police that it did not contain a photograph of his assailant. Johnson was unable to view either array because she had returned to college in Ohio.

[3]In 1992, Gates had pleaded guilty to armed robbery and other charges and was sentenced to from twelve to fifteen years in prison, three years committed, with the balance suspended, with probation until August 1, 1999. The defendant's trial was delayed because he fled the Commonwealth shortly after learning he was a suspect in the crimes and had to be returned from New York.

involvement in the crimes. Without objection, he was able to elicit the fact that Gates was on probation and would remain so for quite some time.[4] In response to the Commonwealth's objection, however, the judge refused to allow counsel to inquire further.

The defendant contends that the judge's refusal to permit him thoroughly to explore the circumstances surrounding Gates's guilty plea and probation arrangement improperly deprived him of his right to reasonable cross-examination for the purpose of showing bias.[5] See *Commonwealth* v. *Michel*, 367 Mass. 454, 459 (1975). We disagree.

It is axiomatic that a criminal defendant is "entitled, as of right, to reasonable cross-examination of a witness for the purpose of showing bias, particularly where the witness may have a motivation to seek favor with the government." *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979). However, "the scope and contours of [such] cross-examination" are subject to the sound discretion of the trial judge. *Commonwealth* v. *O'Connor*, 407 Mass. 663, 672 (1990). See *Commonwealth* v. *Barnes*, 399 Mass. 385, 392-393 (1987). A defendant's right to reasonable cross-examination of a witness "is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently brought to the attention of the trier of fact . . . . " *Commonwealth* v. *Walker*, 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976). *Commonwealth* v.

---

[4]The following exchange occurred, without objection, between defense counsel and Gates:

> DEFENSE COUNSEL: "Miss Gates, you testified that all of your problems as a result of this were over; you've done your time and that was it, correct?"
>
> WITNESS: "Yes."
>
> DEFENSE COUNSEL: "You're on probation now, aren't you?"
>
> WITNESS: "Yes, I am."
>
> DEFENSE COUNSEL: "And you're on probation for a good period of time, aren't you?"
>
> WITNESS: "Yes, I am."

[5]The fact that defense counsel's questions were raised only after Gates was called in rebuttal does not affect our analysis. See *Commonwealth* v. *Martinez*, 384 Mass. 377, 381 (1981).

*Gonzalez*, 23 Mass. App. Ct. 913, 914 (1986), citing *Commonwealth* v. *Hicks*, 377 Mass. 1, 8 (1979).

Here, the jury were fully aware that Gates had pleaded guilty, been sentenced, and served time in prison for her involvement in the crimes and that she was still on probation at the time of trial. Moreover, defense counsel had already asked her, "[Y]ou're on probation for a good period of time, aren't you," to which she had answered, "Yes, I am" (see note 4, *supra*). In his offer of proof, defense counsel requested permission to ask whether she had been "convicted of armed robbery . . . and sentenced to a twelve to fifteen year, suspended sentence, three years committed, balance suspended to 9/1/99."[6] In the circumstances here, where the jury already had been informed that the witness was on probation "for a good period of time," we cannot say that knowing the exact sentence Gates received or the precise date on which her probationary period would end would have affected the jury's evaluation of her credibility. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979) (no abuse of discretion in excluding questions concerning motive where jury had been adequately exposed to the issue). Accordingly, the judge did not abuse her discretion in limiting cross-examination.

*Failure to give intoxication instruction.* After the charge but before the jury had retired to begin deliberations, the defendant orally requested an instruction on the effects of alcohol consumption on the ability to formulate specific intent. The Commonwealth objected to this last minute request, and the judge refused to give the instruction. The defendant argues that the judge's refusal deprived him of his right to a jury determination, beyond a reasonable doubt, on the specific intent element of the offenses of armed robbery and kidnapping.[7]

Where an offense requires proof of specific intent and there is evidence "tending to show" that the accused may have been intoxicated at the time of the offense, the judge, if requested,

---

[6]There is no evidence, and the defendant does not suggest, that Gates received a lenient sentence in exchange for her testimony against the defendant.

[7]Where, as here, the crime of kidnapping is charged under the first clause of G. L. c. 265, § 26 ("[W]hoever, without lawful authority forcibly or secretly confines or imprisons another person within this Commonwealth against his will"), it does not require proof of specific intent. *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 121-122 (1989). The judge nevertheless included an instruction on intent in his instructions on kidnapping.

must instruct the jury to consider the defendant's intoxication in determining whether the Commonwealth has proved that specific intent beyond a reasonable doubt. *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985). If counsel wishes to request that a particular instruction be given, the proper practice under Mass.R.Civ.P. 24(b), 378 Mass. 895 (1972), is to file a written request "[a]t the close of the evidence or at such earlier time . . . as the judge reasonably directs." *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 51 (1986). See Smith, Criminal Practice and Procedure § 1843 (2d ed. 1983). The defendant's oral request, made after the charge to the jury, for an instruction on intoxication thus was not timely under Mass.R.Crim.P. 24(b). *Commonwealth* v. *Yunggebauer, supra.* See *Commonwealth* v. *O'Connor*, 407 Mass. at 666-667.

We have frequently cautioned against applying the rule inflexibly, however, especially in cases involving a failure to instruct the jury on the correct principles of law. See *Commonwealth* v. *Yunggebauer, supra* at 51-52 & n.3. See also *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 751 (1980). Moreover, the rule, in addition to prescribing the proper procedure for requesting special instructions, appears to allow some leeway for last minute requests. In this regard, rule 24(b) provides:

> "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . . Upon request, reasonable time shall be given to each party to object to the charge before the jury retires. Where either party wishes to object to the charge *or to request additional instructions*, the objection or the request shall be made out of the hearing of the jury . . ." (emphasis supplied).

See *Commonwealth* v. *Matos*, 394 Mass. 563, 565 (1985) (rule 24[b] satisfied where defendant did not formally object to failure to give instruction, previously requested in writing, on consciousness of guilt but instead requested additional instruction on consciousness of guilt just before jury retired to deliberate). Contrast *Commonwealth* v. *O'Connor*, 407 Mass. at 666-667 (refusal to give instruction considered under substantial risk of a miscarriage of justice standard where defendant requested instruction for the first time in response to a question from the jury during deliberations).

Even if we were to excuse the defendant's failure to submit a

timely written request under rule 24(b), his claim would fail, because there was no live jury issue on the defendant's possible impairment due to alcohol consumption and the judge's omission of an intoxication instruction therefore did not prejudice his case. See *Commonwealth* v. *Sires*, 413 Mass. 292, 299-300 (1992). Throughout trial, the defendant's sole theory of defense was misidentification. He took the stand and denied any involvement in the crimes. While the record does contain isolated references to the defendant's consumption of alcohol on the night of October 17, 1992,[8] defense counsel never suggested that he was intoxicated, and there was no evidence that he was so intoxicated as to be unable to form the intent to commit the crimes. The record, in fact, contains extensive evidence that the defendant did possess the requisite intent to support his conviction of armed robbery, including the facts that he told Gates that he was going to steal money from the victims, personally searched Gandhi's wallet, instructed Gates to search Johnson's purse, and ordered Johnson and Gandhi to withdraw cash from their bank accounts. Compare *Commonwealth* v. *Fano*, 400 Mass. 296, 307-308 (1987); *Commonwealth* v. *Griffith*, 404 Mass. 256, 260 (1989). Defense counsel, in his closing argument, focused solely on the identification issue, challenging Gates's credibility and arguing that her consumption of alcohol may have affected her ability to recall the events of the night in question. Moreover, he effectively conceded the issue of intent by acknowledging that "everything [the victims] said happened" and by urging the jury to rely exclusively on their comparison of the security photographs of the perpetrator, recovered from one of the ATMs, and the composite drawing of the suspect, completed shortly after the crimes were committed, with the defendant's physical appearance at trial — stating, "[I]f the pictures . . . are the pictures of [the defendant], then find him guilty. And . . . if they're not . . . find him not guilty." Finally, the judge's clear directive to the jury regarding the Commonwealth's burden of proving every element of each crime charged beyond a reasonable doubt further convinces us that any error in not instructing on intoxication as it bore on intent was harmless.

---

[8]Gates testified that the defendant drank vodka at Alewife Station and Johnson acknowledged on cross-examination that she had told the grand jury that her assailants appeared drunk. Additional evidence adduced at trial indicated that Gates and others consumed alcohol throughout the evening.

*The prosecutor's closing argument.* In her closing argument, the prosecutor characterized the victims, both of whom had identified the defendant as their assailant, as thoughtful, careful, and honest witnesses. She further argued that they "were positive that [the defendant was] the man that robbed them."[9] The defendant claims that the prosecutor's reference to the witnesses' honesty and certainty constituted impermissible vouching for the credibility of their identifications and, especially when combined with the fact that the judge failed to instruct the jury on the possibility of honest but mistaken identification, the reference inextricably linked "the reliability of the identification[s] to the . . . veracity" of the witnesses. *Commonwealth* v. *Key*, 19 Mass. App. Ct. 234, 243 (1985), quoting from *Commonwealth* v. *Simmons*, 11 Mass. App. Ct. 156, 162 (1981).

It is well established that a prosecutor may not state his own personal beliefs regarding the credibility of a witness. *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 579 (1986). Here, however, the prosecutor's remarks referred to the witnesses' demeanor on the stand and constituted a proper argument in support of their credibility, as opposed to an expression of her own personal opinion. See *Commonwealth* v. *Stone*, 366 Mass. 506, 516 & n.4 (1974) (no error for prosecutor to describe witnesses as "truthful" and "honest" in pointing out their demeanor in argumentative context).

---

[9]THE PROSECUTOR: "[A] few days ago you heard the testimony of Eryn Johnson and Sunil Gandhi. . . . I'd like you to think back to their testimony and their demeanor on that witness stand. They were both thoughtful witnesses. They were careful witnesses. They were honest witnesses. When they didn't recall something, they indicated that. When they did recall something, they indicated that. When they may have made a mistake, they indicated that as well. But, ladies and gentlemen, both of those witnesses stood before you, took an oath, and testified that they were positive that this is the man that robbed them. . . . And, furthermore, they told you, if they weren't sure, each of them was prepared to come into the courtroom and tell you that, and tell you that they didn't know. But, ladies and gentlemen, they were positive.

"  . . .

"And recall the testimony of Sunil Gandhi, not what he said so much, recall the look in his eyes, recall the anger, the fear and the terror in the eyes of Sunil Gandhi when he looked at this male — "

DEFENSE COUNSEL: "Objection."

THE COURT: "No, proceed."

THE PROSECUTOR: " — and he said 'This is the man that did that to me on that night.' That is how you value the credibility of the testimony."

The defendant argues, however, that the prosecutor's comments could have caused the jury to conclude that because the witnesses were honest the identification was accurate and that the judge should have instructed the jury on the possibility of an honest but mistaken identification. Under *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983), such an instruction must be given where a defendant requests it and the evidence supports it. Here, the defendant did not request the instruction. Instead, he asked only for the "standard instruction" on identification, which was given. We know of no rule that requires the judge to give a *Pressley* instruction sua sponte, in the absence of a proper request. Moreover, after considering the charge as a whole, we think the identification instruction that was given "left the jury with the option [of finding] that the [witnesses were] honestly mistaken in identifying the defendant." *Commonwealth* v. *Key*, 19 Mass. App. Ct. at 243. See *Commonwealth* v. *Elam*, 412 Mass. 583, 587 (1992); *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 7-8 (1990).

The judge gave a standard *Rodriguez* charge (*Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 [1979]) on identification, wherein she informed the jury that in weighing the credibility of each identification, they should consider the witness's opportunity to observe his assailant, the proximity of the witness to the assailant at the time the observation was made, and the quality of the lighting, as well as the amount of time that had elapsed between the occurrence and the identification. She also told the jury that it was their exclusive responsibility to determine credibility and that they should consider both the accuracy and the reliability of the identifications. Finally, the judge emphasized the Commonwealth's burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. In these circumstances, nothing more was required.

*Judgments affirmed.*