## COMMONWEALTH *vs.* JOHN WILLARD.

No. 98-P-2141.

Norfolk. February 10, 2000. - January 28, 2002.

Present: JACOBS, RAPOZA, & GELINAS, JJ.

*Breaking and Entering. Larceny. Practice, Criminal,* Instructions to jury, Lesser included offense, Assistance of counsel. *Evidence,* Identification. *Due Process of Law,* Elements of criminal offense, Identification, Assistance of counsel. *Constitutional Law,* Identification, Assistance of counsel.

At the trial of an indictment charging the breaking and entering of a dwelling house in the nighttime with the intent to commit a felony therein, the judge did not err in instructing the jury, where the judge's instruction that the intended felony referred to in the indictment was larceny in a building was supported by sufficient evidence from which the jury could infer that the defendant intended to commit not merely larceny, but larceny within a building [652-655]; where the judge was not required to define the elements of the intended felony [655-657]; where the judge was not required to instruct the jury regarding lesser included offenses based on factual situations which were speculative and which were unsupported by evidence, or to instruct the jury regarding offenses that did not constitute lesser included offenses [657-659]; and where the judge was not required to give a good faith mistaken identification instruction sua sponte [659].

At the trial of an indictment charging the breaking and entering of a dwelling house in the nighttime with the intent to commit a felony therein, the failure of the defendant's counsel to request a good faith mistaken identification instruction did not create a substantial risk of a miscarriage of justice so as to amount to ineffective assistance, where the instructions to the jury regarding evaluation of the credibility and the reliability of witnesses, the jury's role in determining the weight of the witnesses' testimony, and reasonable doubt, along with defense counsel's actions in challenging the accuracy of the identification during cross-examination and in closing argument, squarely put the defense of misidentification before the jury. [659-661]

INDICTMENT found and returned in the Superior Court Department on May 14, 1997.

The case was tried before *Barbara A. Dortch-Okara*, J.

*John T. Lyons, Jr.,* for the defendant.

*Tracey A. Cusick,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. Following a jury trial in the Superior Court, the defendant was convicted of attempting to break and enter a dwelling house in the nighttime with the intent to commit a felony therein, in violation of G. L. c. 266, § 15. On appeal, he asserts that the trial judge erroneously (1) instructed the jury that the intended felony was larceny in a building, and then failed to define the specific elements of that felony; (2) failed to instruct the jury regarding lesser included offenses; and (3) failed to give an instruction, sua sponte, regarding good faith mistaken identification. The defendant also argues that his trial attorney's failure to request such an instruction constituted ineffective assistance of counsel. We affirm.

1. *Background.* On February 1, 1997, Brett DeMichael and his wife, who lived in an apartment in the Salvation Army building in Quincy,[1] were awakened in the early morning hours by a crashing noise in their living room. As DeMichael was using a bedside phone to call the Quincy police, the building security alarm began to sound. At the same time, Rick Damigella, a Quincy city employee who was driving a road sanding truck near the Salvation Army building, also heard the alarm. He observed a male, whom he described as a "tall guy with a hooded sweatshirt," running away from the building.

At 2:47 A.M., police Officer John Horrigan was dispatched to the scene where he spoke with DeMichael. Horrigan observed that a sliding glass window in the DeMichaels' apartment had been removed from its track and the window screen had been bent and thrown to the floor of the living room. Outside, in the newly fallen snow, Horrigan noted a set of footprints that circled the building, apparently stopping at each door and window. Footprints also led from the building to a Yellow Cab office located nearby. There, Horrigan spoke with a taxi driver, John

---

[1]The Salvation Army employed DeMichael as the community center director and provided him housing in the Salvation Army building, a one-story brick structure.

Wholey, who related that at approximately 2:55 A.M., a dark-haired white male wearing a heavy sweatshirt had approached his cab and requested a ride to 25 Shaw Street in Quincy, a three- to five-minute drive. On direct examination, Wholey identified the defendant as the man he had driven to Shaw Street that night.[2]

Horrigan proceeded to 25 Shaw Street, which appeared to be a rooming house, and observed footprints in the snow similar to those outside the Salvation Army building. He tracked the footprints from the curb to the sidewalk and then up the walk to the front door. Horrigan entered the building, followed a trail of wet spots on the carpet to a door on the first floor, and knocked on it. The defendant, who was wearing wet boots, opened the door. The defendant told Horrigan that he had been home for over an hour and invited him into the apartment. The defendant showed him a light nylon baseball jacket that he claimed to have been wearing that evening. Horrigan, however, noticed a dark-colored hooded jacket hanging in the apartment. When he touched it, he found it to be "soaking wet" and also noticed that the zipper was cold. Shortly thereafter, Horrigan arrested the defendant.

Following the defendant's arrest, the police contacted Damigella and requested that he come to 25 Shaw Street. There he observed both the defendant and the hooded jacket. Damigella testified that he had not seen the face of the man fleeing the vicinity of the Salvation Army building and that, when he observed the accused at the apartment, he (Damigella) could not be certain it was the same person he had seen running. Nonetheless, he noted that the defendant's physical build was consistent with that of the person he had seen running away. He also testified that the hooded sweatshirt he observed at the defendant's apartment "looked familiar . . . [f]rom when I had seen the person running."

2. *Jury instructions.* The defendant first claims that the trial judge erroneously instructed the jury that the intended felony

---

[2]On cross-examination, Wholey was more equivocal, testifying that the defendant looked "so familiar."

referred to in the indictment was larceny in a building.[3] He also assert that even if the intended felony were larceny in a building, the trial judge failed to define the specific elements of that felony for the jury. The defendant further complains that the judge erred by not instructing the jury regarding lesser included offenses and the possibility of a good faith mistake in identification.

a. *Larceny in a building as the intended felony.* To prove a defendant guilty of burglary under G. L. c. 266, § 15, the Commonwealth must establish not only that the defendant did break and enter a dwelling house in the nighttime, but that he did so with the intent to commit a felony. See *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81-82 (1955); *Commonwealth* v. *Randall*, 50 Mass. App. Ct. 26, 29 (2000). A burglary indictment need not specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony. See *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. 517, 521 (1988). See also *Rogan* v. *Commonwealth*, 415 Mass. 376, 379 (1993) (same as to misdemeanor). Where a particular felony is specified either in the indictment or the judge's instruction, "the allegation of the specific felony . . . [is] mere surplusage and unnecessary to describe the crime." *Commonwealth* v. *Randolph*, 415 Mass. 364, 367 (1993).

In the present case, the defendant objected to the judge's instruction to the jury that larceny in a building was the intended felony.[4] When the trial judge asked whether the defendant wanted her to "use something else" as the intended felony, counsel apparently declined the judge's invitation to suggest an alternative and merely reiterated his request that the motion for a required finding of not guilty be allowed. On appeal, the

[3]The indictment itself merely alleges that the defendant "did break and enter in the night time [a] dwelling house . . . *with intent to commit a felony* . . ." (emphasis supplied). Compare G. L. c. 277, § 79.

[4]In opposing the defendant's motion for a required finding, the prosecutor had originally suggested that the intended felony was larceny over $250. The trial judge, in turn, raised the possibility of the intended felony being larceny in a building. Ultimately, with the Commonwealth's agreement and over the objection of the defendant, the judge instructed the jury that the intended felony was larceny in a building.

defendant essentially claims that the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that the perpetrator's intent was to commit the felony of larceny in a building under G. L. c. 266, § 20, and implies that any larcenous intent involved no more than a misdemeanor larceny pursuant to G. L. c. 266, § 30.[5]

To establish the offense of larceny in a building, "it is not enough [for the Commonwealth] to prove that the property stolen was in a building at the time of the theft, and that the defendant was the thief. It is necessary to show also that the property was under the protection of the building, placed there for safe keeping, and not under the eye or personal care of some one in the building." *Commonwealth* v. *Sollivan*, 40 Mass. App. Ct. 284, 286 (1996), quoting from *Commonwealth* v. *Lester*, 129 Mass. 101, 103 (1880). The defendant claims that any property within the DeMichaels' apartment was under their control or supervision and not under the protection of the building. Thus, he argues, the intended offense could not have been a felonious larceny in a building under G. L. c. 266, § 20.

Larceny from a person and larceny in a building are distinguished from each other in large part based upon the circumstances in which the stolen property was safeguarded prior to its theft. We have recently noted the distinction between the two forms of larceny:

> "On many occasions, the property in question will have been placed in the control, or under the supervision, of one or more individuals. It will, at least for a certain period of time, be in the possession of those persons. At other times, personal property will not be left in the control of individuals, but rather will be placed within a secured structure with the expectation on the part of the owner that the structure itself will provide the desired protection against theft."

*Commonwealth* v. *Barklow*, 52 Mass. App. Ct. 765, 767 (2001).

---

[5]Larceny in a building is a felony punishable by incarceration in State prison for not more than five years. G. L. c. 266, § 20. Larceny of property with a value exceeding $250 is also a felony subject to the same penalty. G. L. c. 266, § 30. Larceny of property with a value less than $250 is a misdemeanor punishable by imprisonment in jail for not more than one year. G. L. c. 266, § 30.

Moreover, the structure need not be vacant for property to be "under the protection of the building." *Ibid.* All that is required is that the property be under the protection of the building "rather than under the protection of the person or persons who are present." *Ibid.*[6]

In this case, the jury could reasonably have found that the defendant, after "casing" the building and finding its doors and windows locked, attempted to break and enter the DeMichaels' apartment for the purpose of committing a larceny therein, but fled after making a loud commotion in the living room. See *Commonwealth* v. *Ronchetti,* 333 Mass. at 81-82 (when a person breaks and enters a dwelling house at night, an intent to steal may be inferred, the inference not requiring proof of an actual larceny). See° also *Commonwealth* v. *Noonan,* 48 Mass. App. Ct. 356, 361 (1999). Although present at the time of the attempted break and entry, the DeMichaels were both asleep and thus were neither controlling nor supervising their property within the apartment. See Kantrowitz and Maguire, Massachusetts Criminal Law Sourcebook c. 266, § 25 n.1, at 266 (MCLE 2001) ("Property is under a person's protection if it is attached to him or his clothing or under his immediate guard"). At that point, they were relying on the security provided by the locked doors and windows of the building, along with the alarm system, to safeguard their possessions. Consequently, their property was under the protection of the building rather than under their personal watch and care. See *Commonwealth* v. *Barklow,* 52 Mass. App. Ct. at 767. In these circumstances, there was sufficient evidence from which to infer that the defendant intended to commit not merely a larceny, but larceny in a building.[7]

b. *Elements of the intended felony.* The defendant further

[6]Although no one was present in the main section of the Salvation Army building and any property therein would have been under the protection of the building itself, the indictment limits us to consideration of the defendant's intent as to the "dwelling house," being the DeMichaels' apartment.

[7]Even if the defendant were correct and the evidence supported nothing more than an intent to commit larceny from a person pursuant to G. L. c. 266, § 30, the Commonwealth's evidence was sufficient to prove an intent to commit a felony. Although a felonious larceny must involve property with a value in excess of $250, if the jury believed, as they evidently did, that the defendant entered the DeMichaels' apartment with an intent to steal, they were not

argues that, even if the designation in the judge's charge of larceny in a building as the intended felony was correct, she erroneously failed to define the specific elements of larceny in a building for the jury. Since there was no objection made to the absence of instructions defining those elements, any error would be cause for reversal only if the omission resulted in a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

The trial judge correctly instructed the jury that the Commonwealth bears the burden of proving the defendant's specific intent at the time of the breaking and entering. She properly charged that they "should consider all of the evidence and any reasonable inferences . . . in determining whether or not the Commonwealth has proven beyond a reasonable doubt, as it must, that the defendant acted with the specific intent to commit larceny in a building." Moreover, she accurately informed the jury that if they concluded the defendant intended to commit a larceny in a building, that offense constituted a felony under Massachusetts law.

We are aware of no case that, in circumstances such as these, requires a trial judge to define the elements of the intended felony. Indeed, as we have already noted, a burglary indictment need not even specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony. See *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. at 521. Thus, although here the trial judge did not define the elements of larceny in a building, she was not required to do so.[8] All that was required was that she instruct the jury that they must find, beyond a reasonable doubt, that the defendant had the intent to

required to conclude that he intended to limit his theft to property under $250 in value. *Commonwealth* v. *Lewis*, 346 Mass. 373, 378 (1963), cert. denied, 376 U.S. 933 (1964).

[8] We note that the judge's charge essentially tracked the pattern instruction later published in the Massachusetts Superior Court Criminal Practice Jury Instructions § 2.35, "Breaking and Entering" (MCLE 1999), which does not require the delineation of the specific elements of the intended felony. If no specific felony is charged, or if the evidence suggests a different felony from the one described in the indictment, the model instruction suggests that the trial judge charge the jury that "[t]he Commonwealth is not required to prove the defendant intended any particular felony, but it must prove the defendant

commit some felony. See *Commonwealth* v. *Randolph*, 415
Mass. at 367 (no error where, on an indictment charging armed
assault in a dwelling with intent to commit a felony, to wit:
murder, the jury were instructed that the intended felony could
be either murder or assault and battery by means of a dangerous
weapon). See also *Commonwealth* v. *Hobbs*, 385 Mass. 863,
869-870 (1982) (though the indictment charged breaking and
entering with intent to commit a felony, to wit: larceny in a
building, there was no error where the jury were instructed that
the felony could also be rape, robbery or homicide); *Commonwealth* v. *Costello*, 392 Mass. 393, 402-404 (1984) (on an
indictment charging armed assault in a dwelling with intent to
commit a felony, to wit: robbery, there was no error where the
jury were instructed that the intended felony could be either
robbery or murder).

There was sufficient evidence from which the jury could infer
that the defendant intended to commit a larceny in a building
when he attempted to break and enter the DeMichaels' apart-
ment in the Salvation Army building in the nighttime. *Commonwealth* v. *Ronchetti*, 333 Mass. at 81-82. Moreover, the
judge properly instructed the jury relative to the elements of the
burglary charged in the indictment. See *Commonwealth* v. *Evans*,
42 Mass. App. Ct. 618, 622 (1997) (adequacy of a jury instruc-
tion is determined within the context of the entire jury charge).
Although there was no error in the judge's failure to recite the
specific elements of larceny in a building, even if we were to
conclude that the omission constituted error, in these circum-
stances there was no substantial risk of a miscarriage of justice.[9]

c. *Lesser included offenses.* The defendant next asserts that
the trial judge failed to instruct the jury regarding lesser included

intended to commit *some* felony" (emphasis in original). The instruction does
not provide that the elements of the intended felony be set out.

[9]Although the allegation of a specific felony may be "surplusage and un-
necessary to describe the crime," *Commonwealth* v. *Randolph*, 415 Mass. at
367, where, in the circumstances of a particular burglary case, a trial judge
does endeavor to instruct the jury concerning the elements of the intended
felony, those elements must, of course, be correctly stated. See *Commonwealth*
v. *Bibbo*, 50 Mass. App. Ct. 648, 655-656 (2001) (trial judge's instructions to
the jury concerning the elements of the intended felony of stalking were
accurate). We do not seek to discourage the use of such instructions in ap-
propriate cases.

offenses of the crime charged.[10] Primarily, he argues that the trial judge erroneously failed to instruct the jury that they could consider whether the facts supported the lesser charge of breaking and entering a building in the nighttime with the intent to commit a misdemeanor, in violation of G. L. c. 266, § 16A.[11]

In closing argument, defense counsel speculated that the perpetrator had tried to break into the building in order to obtain refuge from the weather. Aside from evidence of a light snowfall earlier in the evening and a temperature in the high 20's, the record does not otherwise describe the conditions prevailing at the time of the break. This hardly supports a sufficient basis for an instruction to the jury on the theory urged by the defendant. Indeed, the suggestion that the defendant was a mere trespasser seeking to escape the elements is rendered even less tenable by the fact that he lived minutes away from the building. "There is no requirement that a judge charge on factual situations which are speculative and which are unsupported by evidence." *Commonwealth* v. *Thomas*, 21 Mass. App. Ct. 183, 189 (1985), quoting from *Commonwealth* v. *Santo*, 375 Mass. 299, 307 (1978). There was no error in the omission of the requested instruction.

The defendant also claims that the jury should have been instructed that they could consider the crime of trespass as a lesser included offense of the entire charge of breaking and

[10]At the defendant's request, the trial judge did instruct on the lesser offense of attempt to commit the crime charged in the indictment, and the defendant was eventually convicted of attempted breaking and entering of a dwelling house in the nighttime with the intent to commit a felony.

[11]On appeal, the defendant states that the judge should have instructed the jury that they could consider whether the break and entry was committed with the intention to commit either of two misdemeanors: trespass or destruction of property. Although at trial the defendant requested an instruction relative to an intent to commit a trespass, he never requested an instruction concerning destruction of property, which he alludes to for the first time on appeal, without elaboration. At the very least, this does not constitute appellate argument and we decline to consider the issue raised as to the latter offense. Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Vieira*, 401 Mass. 828, 841 (1988) (assertions made in a footnote do not rise to the level of an appellate argument under requirements of Mass.R.A.P. 16[a][4]); *Commonwealth* v. *Salcedo*, 405 Mass. 346, 351 (1989) ("defendant's one-sentence paragraph alleging error . . . does not rise to the level of appellate argument").

entering a dwelling house with intent to commit a felony. This argument is without merit. The offense of criminal trespass contains elements which need not be found to establish a burglary, notably entering or remaining after having been forbidden to do so. See *Commonwealth* v. *Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990). See also Nolan & Sartorio, Criminal Law § 410 (3d ed. 2001) (distinctions between breaking and entry with intent to commit a felony and criminal trespass). By definition, an offense that requires proof of an element different from, and in addition to, those constituting the claimed greater offense is not a lesser included offense. See *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306-307 (1972).

d. *Mistaken identification.* Finally, the defendant claims that the trial judge should have given a good faith mistaken identification instruction sua sponte. In the alternative, he asserts that defense counsel's failure to request such an instruction constituted ineffective assistance of counsel.

"Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it." *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983). See *Commonwealth* v. *Odware*, 429 Mass. 231, 237 (1999) (failure of the judge to give a requested *Pressley* instruction constituted error where mistaken identification was part of the defendant's case); *Commonwealth* v. *Richards, ante* 333, 337-338 (2001) (error for the trial judge to refuse the defendant's proper request for a *Pressley* instruction).

However, regardless of the efficacy of such an instruction, "[w]e know of no rule that requires the judge to give a *Pressley* instruction sua sponte, in the absence of a proper request." *Commonwealth* v. *Traylor*, 43 Mass. App. Ct. 239, 247 (1997). We see no reason here to diverge from the view expressed in *Traylor*. The trial judge was not obliged to give a good faith mistaken identification instruction sua sponte where none was requested. Accordingly, there was no error.

3. *Ineffective assistance of counsel.* Although we conclude that no error was committed by the trial judge in failing to give a *Pressley* instruction sua sponte, we must nonetheless determine whether the defendant would have been entitled to such an

instruction if one had been requested, and whether such an instruction would have made a material difference to the defendant's case. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (we must determine whether "better work might have accomplished something material for the defense"). "[I]f an omission of counsel does not present a substantial risk of a miscarriage of justice . . . , there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution." *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994). See *Commonwealth* v. *Evans*, 42 Mass. App. Ct. at 621-622 (where the lack of extensive identification instructions did not create a substantial risk of a miscarriage of justice, trial counsel's failure to request such instructions did not amount to ineffective assistance).

We start by assuming that the defendant would have been entitled to a *Pressley* instruction if one had been requested, because mistaken identification was part of the defendant's case and evidence was presented supporting that defense. See *Commonwealth* v. *Pressley*, 390 Mass. at 620. Where counsel's failure to make such a request foreclosed the defendant from obtaining the instruction, we must determine whether its omission created a substantial risk of a miscarriage of justice. We conclude that it did not.

The jury were instructed to evaluate both the credibility and the reliability of the witnesses and to take into account their opportunity to observe the events to which they testified. The jurors were also fully informed that it was their role to determine the weight of the witnesses' testimony in light of the circumstances of the case. Similarly, the judge thoroughly instructed the jury concerning reasonable doubt, the Commonwealth's burden of proof, and the presumption of innocence. Compare *Commonwealth* v. *Evans*, 42 Mass. App. Ct. at 621-622 (no substantial risk of a miscarriage of justice where, in the absence of a request from counsel, the judge did not give detailed identification instructions, but emphasized that the Commonwealth must prove the accuracy of a witness's identification beyond a reasonable doubt, and informed the jury as to the burden of proof, the presumption of innocence, and the credibility of witnesses).

Defense counsel challenged the accuracy of the identification of the defendant during his cross-examination of the Commonwealth's witnesses and again during closing argument. The prosecution's two eyewitnesses admitted that their observations of the perpetrator were fleeting. The truck driver acknowledged that he never saw the face of the man he observed running from the vicinity of the Salvation Army building. Moreover, he testified that, although the defendant's physical build was consistent with that of the fleeing man, he could not be certain it was the defendant. Similarly, the taxi driver was equivocal in his identification of the defendant, concluding merely that he looked "so familiar."[12]

Counsel for the defendant ably targeted these infirmities in identification during his cross-examination of the Commonwealth's witnesses. Similarly, he thoroughly argued misidentification in his closing argument to the jury. Compare *Commonwealth* v. *Elam*, 412 Mass. 583, 587 (1992) (no error in the refusal to give a good faith mistake charge where the jurors were alerted to the issue of misidentification by defense counsel's cross-examination of witnesses and closing argument, and where the jury charge tracked the model instruction on identification). In these circumstances, there is no doubt that the defense of misidentification was squarely before the jury and, therefore, the lack of an instruction on good faith mistaken identification did not create a substantial risk of a miscarriage of justice. The failure of defense counsel to request a *Pressley* instruction did not amount to ineffective assistance of counsel.

*Judgment affirmed.*

---

[12]The issue of good faith mistaken identification appears to be of little moment as to Wholey, the taxi driver. In his closing to the jury, defense counsel acknowledged that the defendant had gone home in Wholey's taxi, but argued that he had not been involved in the breaking and entering at the Salvation Army building.