## COMMONWEALTH *vs.* TROY EVANS.[1]

No. 95-P-1266.

Hampden. March 20, 1997. - May 15, 1997.

Present: WARNER, C.J., BROWN, & JACOBS, JJ.

*Practice, Criminal,* Instructions to jury, Assistance of counsel, Comment by prosecutor, Deliberation of jury, Verdict. *Identification. Evidence,* Identification, Failure to produce witness.

A criminal defendant was not denied effective assistance of counsel by reason of counsel's failure to have requested more extensive and detailed instructions on the issue of identification, where the failure to give such instructions did not create a substantial risk of a miscarriage of justice. [620-623]

At a criminal trial, the prosecutor's remarks in closing argument regarding the defendant's failure to call an alibi witness, without having obtained the judge's permission, were improper but provided no basis for reversal of the defendant's conviction. [623-624]

In the circumstances of a criminal case, in which the evidence was not extensive and the issues not complex, the judge appropriately gave a *Tuey-Rodriquez* charge after the jury had deliberated for nearly two hours and had indicated that they would appreciate further direction from the judge [624-625], and the judge's comments at jury voir dire and at the beginning of the trial that it would be a fairly short trial could not have coerced the jury into rendering a hasty or unfair verdict, where the jury deliberated another two hours after receiving the supplemental instructions [625].

At the trial of an indictment alleging breaking and entering the dwelling of another in the daytime with intent to commit a felony therein, there was no likelihood that the jurors were misled or confused by the omission on the verdict slip of the words "with intent to commit a felony," where the elements of the crime were properly charged in the indictment which was read to the jury and attached to the verdict slip, and where the judge correctly instructed the jury on the elements of the crime, emphasizing the element of intent to commit a felony. [625-627]

INDICTMENTS found and returned in the Superior Court Department on February 1, 1994.

---

[1]Also known as Turegnald Evans.

The cases were tried before *Richard F. Connon*, J.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. A Superior Court jury convicted the defendant of breaking and entering the dwelling of another in the daytime with intent to commit a felony therein (G. L. c. 266, § 18) and larceny in a building (G. L. c. 266, § 20). On appeal, the defendant contends (1) that the trial judge erred in failing to give the proper identification instructions to the jury and that defense counsel's failure to request such instructions constituted ineffective assistance of counsel; (2) that the prosecutor's comment during his closing argument on the defendant's failure to call a witness created a substantial risk of a miscarriage of justice; (3) that the judge's premature use of the so-called *Tuey-Rodriquez* charge, combined with improper comments regarding the probable length of the case, was coercive; and (4) that the omission of essential language from the verdict slip regarding the charge of breaking and entering in the daytime with the intent to commit a felony therein renders his conviction on that charge a nullity. Our review of the record reveals no basis for reversing the defendant's convictions.[2]

On January 4, 1994, a cordless telephone was stolen from a house on Union Street in Springfield. Linda Goines, a next door neighbor, heard the sound of breaking glass at about 4:30 P.M. and stepped onto her front porch, where she observed a man climbing through the shattered front window of the house. Goines immediately went into her house and called the police, then promptly returned to the porch, which was approximately ten to fifteen feet from the house. She called to the man, indicating that she had seen him going in, and observed the man as he emerged from the window and ran off. At no time was Goines able to see the thief's face. She did notice, however, that he was African-American, and that he was wearing a short, waist-length, brown leather jacket and "bright," "goldish-yellow" pants.

[2]Because each of the defendant's challenges is raised for the first time on appeal, our review is limited to whether the errors, if any, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Two officers from the Springfield police department arrived at Goines's home within minutes of her call. Goines provided them with a description of the man she had observed, and the officers radioed the description to other cruisers in the area. One of the officers picked up a trail of footprints, clearly visible in the freshly fallen snow and leading away from the house. The officer followed the prints for approximately 200 yards, through several backyards onto Eastern Street, past a restaurant called Mr. Fish, and back onto Union Street. He then noticed a man walking on the opposite side of the street, dressed in a leather jacket and yellow pants. The officer also noticed a police cruiser nearby, radioed his observations to the officers in the cruiser, and watched as they apprehended the defendant. When the defendant removed his hands from his pockets a cordless telephone, later identified by Anita Marie Watson as the one stolen from her home, fell to the ground. By all accounts, less than ten minutes had elapsed from the police officers' initial response to Linda Goines's call.

The defendant agreed to accompany the officers to Linda Goines's house, where she identified his clothing as that worn by the perpetrator. Goines did not, however, recognize the defendant's face.

At trial, the defendant maintained that he was not the perpetrator and that at the time of the break in, he was eating a meal at the Mr. Fish restaurant. He further testified that as he was preparing to leave Mr. Fish he observed an individual known to him only as "Predator" attempting to sell the cashier a cordless telephone. The defendant stated that, because the antenna on the phone was broken, the cashier was unwilling to meet Predator's asking price and that he had subsequently purchased the phone for ten dollars. Finally, the defendant testified that he was approached by police moments after leaving Mr. Fish.

1. *Identification instructions.* The defendant contends that he was denied the effective assistance of counsel by his trial attorney's failure to request extensive jury instructions on the issue of identification. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979); *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983); *Commonwealth* v. *Carter*, 423 Mass.

506, 515 (1996).[3] Specifically, he claims that he was entitled to an instruction on the suggestiveness of the identification procedure used by police and the possibility of an honest but mistaken identification by Linda Goines.[4]

Although the defendant may have been entitled to more detailed identification instructions had defense counsel made a timely request, the failure to give such instructions did not

[3]Although he initially requested an identification instruction, defense counsel subsequently agreed with the judge that "a lot of the traditional parts of the [identification] instruction . . . don't apply anyway." The judge's instruction on identification consisted of the following:

> "The Commonwealth has the burden to prove to you beyond a reasonable doubt the identification of the defendant, Mr. Evans. And how do they prove to you beyond a reasonable doubt his identification? You can consider the testimony of Mrs. Goines.

> "Mrs. Goines was the only individual who apparently saw Mr. Evans or allegedly saw the man that she described go into a house. She described what he was wearing and so forth. Well, you have the right to consider her ability to testify. Testimonial facilities [*sic*] as they are sometimes referre[d] to, her ability to remember and relate to you the events as they occurred back on January 4th of 1994. You have the right to consider the distance that she may have been from the house at the time and the window.

> "You have the right to consider the lighting conditions. You have the right to take into consideration her interest or lack of interest in the case as well. The Commonwealth must prove her identification beyond reasonable doubt."

[4]The defendant alleges error in the judge's failure to give the following portion of the instruction recommended by the Supreme Judicial Court in *Commonwealth* v. *Rodriguez*, 378 Mass. at 311:

> "If the identification . . . may have been influenced by the circumstances under which the defendant was presented . . . for identification, you should scrutinize the identification with great care . . . . You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

He also maintains that, had defense counsel requested an instruction on the possibility that Goines's identification of him (or his clothing) was the result of a good faith mistake, the judge would have been obliged to give the instruction. *Commonwealth* v. *Pressley*, 390 Mass. at 620 ("Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it").

create a substantial risk of a miscarriage of justice. Accordingly, "trial counsel's failure to request more extensive instructions did not deprive the defendant of his right to effective assistance of counsel." *Commonwealth* v. *Conceicao*, 388 Mass. 255, 266 (1983). See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994) (an omission by counsel that does not create a substantial risk of a miscarriage of justice cannot form the basis of a successful claim of ineffective assistance).

"The legal adequacy of a particular instruction . . . can only be judged in the context of the whole charge . . . ." *Commmonwealth* v. *Carrion*, 407 Mass. 263, 270 (1990). Here, we think the charge "adequately cover[ed] the issue" of identification. *Commonwealth* v. *McMaster*, 21 Mass. App. Ct. 722, 727 (1986). The judge's instructions fully informed the jurors of the Commonwealth's burden of proof, emphasizing the presumption of innocence and the elements required to find the defendant guilty of the crimes with which he was charged. Further, the judge emphasized the requirement that the Commonwealth prove the accuracy of Linda Goines's identification beyond a reasonable doubt. *Id*. at 728. The instructions also alerted the jury to the possibility of a mistaken identification by permitting them to consider the circumstances in which the identification was made, and defense counsel forcefully challenged the reliability of Goines's identification during cross-examination and again in his closing argument. See *Commonwealth* v. *Durant*, 10 Mass. App. Ct. 768, 772 (1980). In these circumstances, there can be no doubt that the defense of mistaken identification was before the jury. See *Commonwealth* v. *Elam*, 412 Mass. 583, 587 (1992).

Contrary to the defendant's claim, his entire defense at trial did not depend on the reliability of Linda Goines's identification. Indeed, Goines never claimed to have seen the perpetrator's face, only to have observed his clothing, which she said matched that worn by the defendant. Further, the prosecution's case against the defendant was strong. Footprints were followed from the scene of the crime to near where the defendant was observed wearing clothing matching Goines's description. Moreover, he was apprehended only minutes after the break-in, approximately 200 yards from the crime scene, in possession of the stolen telephone. We are

confident that any omissions from the judge's charge could not have influenced the outcome of the trial.

2. *Propriety of prosecutor's missing witness comment.* Without obtaining the judge's permission, the prosecutor commented briefly, during his closing argument, on the defendant's failure to call as an alibi witness the cashier at Mr. Fish.[5] The defendant argues that the prosecutor's failure to obtain a favorable ruling from the judge before making the comment created a substantial risk of a miscarriage of justice.

"Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If then, without explanation, he does not do so, the jury may . . . infer that that person, had he been called, would have given testimony unfavorable to the party." *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). Whether to instruct the jury on the propriety of such an inference is "a matter for the trial judge's discretion." *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 81 (1993), citing *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992). If, however, "counsel plans to argue to the jury that an inference may be drawn against the [defendant] for failure to call a witness, the proper practice is first to obtain the permission of the trial judge." *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 658 (1989).

It is undisputed that the prosecutor failed to obtain the necessary permission before commenting on the missing witness. His comment was therefore improper. Such impropriety, however, "does not . . . ordinarily create a basis for reversal; it merely creates the risk that the attorney will be interrupted by the judge who may then give an unfavorable instruction." *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. 570, 582,

---

[5]Toward the end of his argument, the prosecutor stated:

> "Now let's look at what [the defendant] says. . . . [His] story about where he was [is] not corroborated by anyone. And the owner of the fish store, Mr. Fish. Where [is she] to corroborate his story? Not here."

Although he mentioned the owner of Mr. Fish, the prosecutor would appear to have been referring to the cashier, whom the defendant claimed could have substantiated his alibi.

*S.C.*, 418 Mass. 777 (1994). Here, no such interruption occurred. "[W]e must therefore assume that [the judge] found the [prosecutor's reference] justified by the evidence."[6] 36 Mass. App. Ct. at 582.

3. *Timing of the* Tuey-Rodriquez *charge.* The defendant next challenges the supplemental charge given to the jury in accordance with *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), as modified by *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973),[7] after they had deliberated for approximately one hour and fifty minutes. He argues that the charge was premature and unduly coercive, especially when viewed in conjunction with allegedly inappropriate comments made by the judge regarding the probable length of the case.

A *Tuey-Rodriquez* charge "is intended to be used when because of the lapse of time or otherwise the judge apprehends that the jury is deadlocked." *Commonwealth* v. *Rodriquez*, 364 Mass. at 98. The use of the charge "rests largely in the sound discretion of the trial judge." *Commonwealth* v. *Brunelle*, 361 Mass. 6, 12 (1972). While we acknowledge that "special circumstances" might occasionally render the use of the *Tuey-Rodriquez* charge inappropriate, see *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1006 (1982), no such circumstances existed here.

The evidence in the case was not extensive, and the issues were not complex. Cf. *Commonwealth* v. *Connors, supra* (pros-

---

[6]We need not reach the issue whether the judge would have granted the prosecutor's request to comment on the missing witness had it properly been made. We note, however, that the defendant testified that his brother had contacted the cashier, and that she was unwilling to testify because of outstanding warrants against her. While it is true that "[a] witness may be withheld because of [a] prior criminal record, or because [s]he is susceptible to cross-examination on collateral issues, or for other tactical reasons," *Commonwealth* v. *Franklin*, 366 Mass. 284, 294 (1974), nothing in this record indicates that such a tactical decision was made, see *Commonwealth* v. *Graves*, 35 Mass. App. Ct. at 86 n.11, that the defendant actually attempted to summon the witness, or that she was otherwise unavailable to a defense summons. See *Commonwealth* v. *Buonopane*, 9 Mass. App. Ct. 651, 658-659 (1980).

[7]"The essence of [the] charge is that jurors should not assume that another jury would be better able to decide the case, that those jurors in favor of conviction should ask themselves whether they are truly convinced beyond a reasonable doubt, and that those jurors in favor of acquittal should ask themselves whether their doubts are reasonable." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 678 n.10 (1992).

ecution on several indictments arising from breaking and entering a dwelling while armed with a dangerous weapon and the commission of an assault therein did not raise complicated issues for the jury). Moreover, the judge delivered the charge only after receiving a note from the jury: "We have been deliberating for two hours and have had considerable discussion. After two votes, we are still split almost 50/50. At this stage we are making very little progress and would appreciate any advice or direction from you." In these circumstances, "the risk that the charge was premature was virtually non-existent." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 679 (1992).

The defendant focuses on a comment made by the judge before he commenced the voir dire questions to the effect that this would be a fairly short trial, that "we should conclude . . . at eleven," and that "[y]ou'll be out of here tomorrow, more than likely, by noontime." A similar comment was made after the jury was seated and before trial began.[8] We are not persuaded that the judge's estimates as to when the case would likely conclude "engendered in the jurors' minds inappropriate expectations about the significance of the case [or] the speed and attentiveness with which they should conduct their deliberations." Contrast *Commonwealth* v. *Pleasant*, 366 Mass. 100, 105 (1974) (judge's remarks indicating that a retrial would be extremely expensive, boring, and like "seeing a movie the second time" were potentially prejudicial). Although the remarks may have been " 'inappropriate and . . . better left unsaid,' " *Commonwealth* v. *Connors*, 13 Mass. App. Ct. at 1007, we do not think they could have coerced the jury into rendering a hasty or unfair verdict. The fact that the jury deliberated for nearly two hours after receiving the charge before reaching a verdict further supports our conclusion. Cf. *Commonwealth* v. *Moore*, 359 Mass. 509, 516 (1971) (charge not coercive where jury returned verdict twenty-two minutes after receiving it); *Commonwealth* v. *Brunelle*, 361 Mass. at 12 (ten minutes); *Commonwealth* v. *Jenkins*, 416 Mass. 736, 740 (1994) (fifteen minutes).

4. *Missing language on verdict slip.* Finally, we address the

---

[8]In addition to these comments, the defendant refers to remarks made by the judge outside the jury's presence. Because we do not see how these remarks could have influenced the jury in any way, we do not consider them here.

argument that the defendant's conviction for breaking and entering the dwelling of another in the daytime with the intent to commit a felony therein (G. L. c. 266, § 18) was rendered a nullity by the omission on the verdict slip of the words "with the intent to commit a felony." The defendant further complains that the session clerk who took the verdict similarly omitted the essential language and that he was therefore convicted of the non-existent crime of breaking and entering the dwelling of another in the daytime.

In support of his argument, the defendant relies on the "venerated principle . . . [providing] that '[t]he only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict, given in and assented to, in open court . . . . ' " *Commonwealth* v. *McCarthy,* 37 Mass. App. Ct. 113, 117 (1994), quoting from *Lawrence* v. *Stearns,* 11 Pick. 501, 502 (1831). Although this "[g]eneral rule has been applied strictly," it is not absolute. Indeed, in *Commonwealth* v. *McCarthy,* 37 Mass. App. Ct. at 117-118, we permitted an exception to the rule in circumstances virtually identical to the ones presented here (conviction for breaking and entering in the daytime with intent to commit a felony therein affirmed where the clerk "referred to an abbreviated version of the offense" but the judge correctly instructed the jury on the elements of the crime, which was properly charged in the indictment). See *Commonwealth* v. *Andino,* 34 Mass. App. Ct. 423, 427 (1993) (conviction for receiving a stolen motor vehicle affirmed where the evidence, arguments and instructions at trial matched the charges but the clerk inadvertently referred to the crime of receiving stolen property).

Here, the verdict slip read only "breaking and entering in the daytime," and the clerk, in taking the verdict, read directly from the slip. The elements of the crime of which the defendant was convicted, however, were properly charged in the indictment, which was read to the jurors at the beginning of the trial. In addition, the judge correctly instructed the jury on the elements of the crime, and he emphasized the element of intent to commit a felony by describing the difference between specific and general intent and instructing the jury that larceny in a building was indeed a felony. Finally, as counsel conceded at oral argument, a copy of the indictment was attached to the verdict slip during the jury's delibera-

tions. In light of these circumstances, while we do not condone omissions on verdict slips, we discern no likelihood that the jurors could have been misled or confused by the omission of the language relating to the intent to commit a felony.

*Judgments affirmed.*