COMMONWEALTH *VS.* GEOVANNI RIVERA.

Hampden. February 4, 1999. - June 2, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Search and seizure. *Waiver. Search and Seizure,* Consent, Forcible entry by police. *Practice, Criminal,* Verdict. *Controlled Substances.*

Where police did not forcibly enter a dwelling to execute an arrest warrant, the "knock and announce" rule did not apply. [624-625]

At the trial of an indictment alleging trafficking in over 200 grams of cocaine, in which the Commonwealth introduced evidence of well over 200 grams of cocaine seized from the defendant's apartment, in which the weight of the cocaine was not a live issue, and in which the judge emphasized the weight element in her instructions, that the verdict read in open court and the verdict slip which the foreperson signed omitted the weight of the cocaine did not require that the conviction be reduced to reflect trafficking cocaine of an unspecified weight. [625-627]

INDICTMENTS found and returned in the Superior Court Department on December 20, 1994.

A pretrial motion to suppress evidence was heard by *Mary-Lou Rup,* J., and the cases were tried before her.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of trafficking in 200 or more grams of cocaine and unlawful possession of a firearm and ammunition. Prior to trial, the judge denied the defendant's motion to suppress evidence seized during his arrest. The defendant now appeals from all three convictions, arguing that the judge improperly denied his motion to suppress and, in the alternative, urging us to reduce his conviction to reflect possession of a lesser quantity of cocaine. We granted the defendant's application for direct appellate review and now affirm.

The motion judge found the following facts. The arresting officers were part of a team of six or seven Holyoke police officers assigned to execute outstanding Superior Court criminal warrants. The officers were given a folder containing a copy of the warrant, a photograph of the prospective arrestee, and an address at which that person might be found. All officers assigned to the team wore some sort of police insignia. Among the targets named in the arresting officers' folder were the defendant and William Figueroa, both of whom were to be sought at 280 Oak Street in Holyoke in a multi-family, four-story apartment building. At trial one of the officers testified that the defendant lived in the "second left" apartment.[1] The officers arrived at this address sometime before 7:30 A.M. and, after ringing a doorbell and knocking on a first-floor window, were admitted into the common area by a tenant. Two of the officers began knocking on apartment doors asking for the defendant and Figueroa. Tenants responding to the knocks indicated that they did not know where the two men lived. The officers then proceeded to the second floor, knocking on one other tenant's door before arriving at the defendant's door. After banging on the door, they heard footsteps and the sound of people moving inside, but received no response. They continued banging, calling out: "Open the door. Police. We want to talk to you . . . . What's your name? Geovanni Rivera. Does he live here?" At this point the officers received a radio transmission from officers covering the rear of the building that someone had fled through the rear door. Both officers ran outside to assist in the chase. The fleeing man (later discovered to be Figueroa) was apprehended and the same two officers returned to the defendant's door, pounding and kicking at it, and calling out, "Open up. We know someone's in there." The judge found that, although the officers had damaged the door through their aggressive knocking and kicking, they did not force it open and it remained locked from the inside. After roughly five to ten minutes, a man inside called out, "Hold on. I'm opening the door," whereupon the defendant answered the door, naked. The officers showed him the warrant for his arrest and told him they had to arrest him. They then asked him (in Spanish) whether he wished to dress and the defendant stated he did. Having arrested

---

[1]The defendant was apprehended in "apartment 2L," the left hand apartment on the second floor.

the defendant, the officers followed him through the kitchen and into the bedroom. One of the officers conducted a protective sweep of the apartment to determine whether others were present. Both officers noticed a black fabric bag in the kitchen. The bag was partly open and inside it, in plain view, the officers noticed clear vials with bright orange caps. One of the officers knew from training and experience that vials of this type were often used by local dealers as packaging for cocaine. This officer then "looked around inside" the bag and noted several paper bags filled with vials containing what looked to be cocaine, a razor blade, and a hand gun. Leaving the bag in the kitchen, he resumed escorting the defendant to the bedroom to dress. The officers advised the defendant of his Miranda rights in Spanish twice, which the defendant freely and voluntarily waived. The defendant then signed a "consent to search" form that one of the officers had translated into Spanish for him. At this point, the defendant indicated that he lived in the apartment and had originally rented it under another name, but that he later changed the name on the lease to his friend's name. On a subsequent search of the apartment, the police discovered and seized the black bag along with its contents, narcotics, narcotics-related paraphernalia, cash, and personal documents.

On appeal, the defendant argues that the officers entered the apartment unlawfully, in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights or, in the alternative, that the officers, in failing to notify the defendant that they were there to arrest him, violated the knock and announce rule. The defendant further contends that the judge should not have admitted the items seized and the defendant's statements in evidence, because they were obtained as a result of an unlawful entry into the defendant's home. Lastly, the defendant argues that, because neither the verdict slip nor the jury's verdict given in open court indicated the amount of cocaine on which the jury based their conviction, we should reduce the conviction to reflect that the jury never decided whether the defendant had trafficked in 200 or more grams of cocaine.

*Motion to suppress.* The defendant argues for the first time on appeal that the officers' entry into his home was unconstitutional under the Fourth Amendment and art. 14, because the officers did not have a reasonable belief that the defendant was inside

the apartment. In his initial memorandum in support of his motion to suppress, the defendant argued only that the police failed to knock and announce their purpose before executing the arrest warrant, and that the defendant did not voluntarily consent to the apartment search. In a subsequent memorandum, the defendant asserted that suppression was compelled by our decision in *Commonwealth* v. *Forde*, 367 Mass. 798, 806 (1975), where we stated that, "the Fourth Amendment prohibits a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant."[2] Because the defendant did not raise a lack of reasonable belief theory below, the evidence is scant on this issue. That the defendant actually lived and was ultimately arrested with Figueroa in that building, suggests that such evidence would have been more complete had the defendant argued his suppression motion on this ground. Because the defendant did not alert the trial judge to this argument, the waiver doctrine precludes him from doing so on appeal. See *Commonwealth* v. *Burnett*, 428 Mass. 469, 475-476 (1998); *Commonwealth* v. *Amirault*, 424 Mass. 618, 641 n.15 (1997) ("A constitutional right is, in most cases . . . a right to insist that things be done in a certain way, but it is not a right that they be done in that way if the defendant does not choose to insist. . . . [A] right that must be claimed is not denied if it is not claimed, and the proceeding in which the claim is not made is, in that respect, wholly free from error"); *Commonwealth* v. *Ramos*, 402 Mass. 209, 211-212 (1998), and cases cited. Even had he properly preserved the issue, however, the result would be no different.

The defendant bases the Fourth Amendment claim on his assertion that the police did not have his consent to enter the apartment and, therefore, the arrest was premised on an unlawful entry. Assuming that the officers had a reason to believe that the defendant was inside the apartment, this argument is disposed of by *Payton* v. *New York*, 445 U.S. 573, 603 (1980), where the United States Supreme Court stated the applicable rule: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Even if art. 14

---

[2]The defendant concedes that this case is inapposite to the present facts where the officers had an outstanding warrant for his arrest.

requires probable cause to support the officers' belief, the defendant's cause is not advanced.

When the police knocked on the defendant's door, they were lawfully on the premises. As stated above, at that point, under the Fourth Amendment the police could have entered the apartment on a reasonable belief that the defendant was within. *Payton* v. *New York*, 445 U.S. 573, 603 (1980). As we mentioned previously, at the police station the officers had been given the defendant's picture and were told where the defendant would likely be found. Moreover, at that moment the officers knew that another suspect had fled on learning of their presence. Even if at that time they had not yet learned that the fleeing suspect was Figueroa, his attempt to flee after they had identified themselves as police officers looking for Figueroa and Rivera, corroborated the information they had received that the defendant might be found at that address. Given these facts, the police had more than a reasonable belief; they had probable cause. Accordingly, even if art. 14 requires more than a reason to believe that the defendant was within the apartment to justify a forcible entry (a proposition that we do not reach) suppression would not be required because the officers did not enter forcibly and because they had more than a mere reason to believe that the defendant was in the apartment.

The defendant next argues that the motion to suppress should have been granted because the police did not state their purpose when they knocked on his door. We disagree. The defendant relies on *Commonwealth* v. *Antwine*, 417 Mass. 637, 638 (1994), where we stated: "Before attempting *forcibly* to enter a private dwelling to execute a warrant, police must knock, announce their identity, and state their purpose, unless the circumstances justify dispensing with one or all of these requirements" (emphasis added). By its very terms this rule applies to a forcible entry. We have never held that aggressive knocking against a locked door, ultimately opened by the defendant, constitutes forcible entry for purposes of search and seizure analysis. Absent forcible entry, this rule is inapplicable. *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 181-182 (1989).[3]

---

[3]Even assuming the defendant did not consent to the apartment search, this does not alter our conclusion that the entry was not forcible. Under *Payton* v. *New York*, 445 U.S. 573 (1980), they were authorized to arrest him regardless

In sum, we conclude that the defendant's consent was unnecessary, that the entry was not forcible, and, therefore, that the officers were properly on the premises. The evidence resulted from a lawful search, and the judge properly denied the suppression motion.

*Deficiency of the verdict.* The defendant next challenges his ˙ conviction because both the jury's verdict read in open court and the verdict slip which the foreperson signed omitted the weight of the cocaine involved. He argues that this omission requires us to reduce his conviction from trafficking in 200 or more grams of cocaine, to the less serious penalty for trafficking cocaine of an unspecified weight. We conclude that the omission does not require that we reduce the conviction.

The general rule is:

> "The only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court."

*Commonwealth* v. *McCarthy*, 37 Mass. App. Ct. 113, 116-117 (1994), quoting *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831). But as the Appeals Court has correctly noted, this rule is not without exception. *Commonwealth* v. *McCarthy, supra* at 117. See *Commonwealth* v. *Evans*, 42 Mass. App. Ct. 618, 626-627 (1997); *Commonwealth* v. *Andino*, 34 Mass. App. Ct. 423, 427-428 (1993). The exception is fully applicable here.

In *Commonwealth* v. *McCarthy, supra* at 114-118, the Appeals Court addressed a similar argument. There the defendant was convicted of breaking and entering a dwelling in the daytime with the intent to commit a felony, but the verdict slip and the charge read by the clerk omitted the "with intent to commit a felony" portion of the charge. *Id.* at 114. In rejecting the claim of error, the court noted:

> "In his instructions to the jury on the indictment which charged the defendant with the crime of breaking and entering in the daytime with intent to commit a felony

---

of consent. The fact that there was no threat of violence and that it was the defendant (rather than the police) who unlocked the door is the relevant inquiry. See *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 181-182 (1989).

(G. L. c. 266, § 18), the judge correctly defined each element of the offense and clearly informed them that they had to find beyond a reasonable doubt that the breaking of the building must be with 'the specific intent to commit a felony.' . . . The intent element . . . did appear on the face of the indictment, which was attached to the verdict slip and sent to the jury. After deliberations the foreperson checked on the verdict slip for that charge the box indicating guilt."

*Id.* at 115-116. The Appeals Court rejected a similar argument in *Commonwealth* v. *Andino, supra*. In that case, the court declined to reduce a defendant's conviction to "receiving stolen property" where the verdict slip failed to mention the charge of receiving a stolen motor vehicle. The court concluded that, because "[t]he evidence, arguments, and instructions at trial relating to a particular stolen motor vehicle" matched the charges, there was no risk that the jurors were mistaken. *Id.* at 427. Most recently, that court reached the same result on similar facts in *Commonwealth* v. *Evans, supra*.

Here the record reveals that the weight of the cocaine was not a live issue at trial. The Commonwealth introduced evidence of well over 200 grams of cocaine seized from the defendant's apartment. In response, the defense argued only that the defendant was not aware that the drugs were in his apartment. During closing arguments, counsel for both the prosecution and the defense highlighted the weight requirement.[3] The indictment, which the clerk read to the jury at the beginning of trial and was attached to the verdict slip during their deliberations, also included the weight requirement. Additionally, the judge instructed the jury as to all elements of the offense, and in her

---

[3]Defense counsel stated: "And unless you believe that he knew there was over *200 grams* of cocaine in that bag . . . then that presumption of innocence is still intact" (emphasis added).

Similarly the prosecutor's closing included the following:

"You will have as Her Honor will instruct you, ladies and gentlemen, a laboratory analysis which you can consider on the issue of whether or not the substance is cocaine. And that was over *200 grams*. Again, the laboratory analysis on one sample of the powder cocaine sample that was found inside that bag . . . this sample alone is in excess of *200 grams*, according to the analysis." (Emphasis added.)

final instructions, placed heavy emphasis on the weight require-ment.

In light of these instructions and the surrounding circum-stances, there is no risk that the jurors were misled by the omis-sion.

*Judgments affirmed.*