NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-183                                            Appeals Court

   JOEL WEISS  vs.  LOOMIS, SAYLES & COMPANY, INC., & another.[1]


                         No. 23-P-183.

       Suffolk.    December 1, 2023. – March 28, 2024.

         Present:  Wolohojian, Milkey, & D'Angelo, JJ.


Independent Contractor Act.  Practice, Civil, Instructions to
     jury, Special verdict.



     Civil action commenced in the Superior Court Department on
January 30, 2014.

     Following review by this court, 97 Mass. App. Ct. 1 (2020),
the case was tried before Christine M. Roach, J.


     Stephen S. Churchill for the plaintiff.
     James W. Bucking (Allison L. Anderson also present) for the
defendants.


     MILKEY, J.  The plaintiff, Joel Weiss, is a software

engineer.  Over a three-year period, he provided services to the

defendant, Loomis, Sayles & Company, Incorporated (Loomis), an

investment firm.  Weiss brought the current action pursuant to

---

     [1] Loomis, Sayles & Company, L.P.

G. L. c. 149, § 148B (a), claiming that he properly should be considered to have been an "employee" of Loomis, and that, as such, he was entitled to the benefits he would have received had he been so classified. Loomis maintained that Weiss lacked standing to bring such a claim, because Weiss provided his services to Loomis through two layers of intermediary entities. A jury ruled in Loomis's favor on the standing issue, and judgment entered that "Weiss shall take nothing." On appeal, Weiss challenges the jury instructions on standing, and the wording of the special verdict slip on that issue. For the following reasons, we conclude that when the verdict slip is viewed in conjunction with the jury instructions, Weiss is unable to show error or prejudice. We therefore affirm.

Background. "The purpose of the independent contractor statute [G. L. c. 149, § 148B] is 'to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate that they are, in fact, employees.'" Chambers v. RDI Logistics, Inc., 476 Mass. 95, 100 (2016), quoting Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 620 (2013). Where individuals provide services directly to the employer, the application of the statute is relatively straightforward: they are presumptively considered employees unless the employer -- carrying the burden of proof -- proves that three separate

prongs are all satisfied.[2] Chambers, supra. However, the situation becomes murkier where the individual provides services to the employer through an intermediary entity. In such circumstances, the individual may not have standing to pursue a misclassification claim, because the statute was not intended to bar "legitimate business-to-business relationship[s]."[3] Id. at 109. The question is whether the corporate form of the intervening firm "represents" such a relationship or instead is "one whose raison d'etre is to prevent the classification of workers as employees." Id. As the case before us illustrates,

---

[2] These are:

"(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

(2) the service is performed outside the usual course of the business of the employer; and

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

G. L. c. 149, § 148B.

[3] Although the cases characterize the issue as one of standing, it does not go to whether the plaintiff suffered harm, but instead whether the statute was intended to apply to the plaintiff's circumstances. In some respects, the issue is perhaps better viewed as adding an additional set of substantive considerations to the existing three-prong test of what makes a worker an employee.

framing how a jury is to resolve whether a business-to-business relationship is "legitimate" can be challenging.

Loomis paid for Weiss's services through a contract it had entered into with the Eliassen Group (Eliassen), a large and long-established staffing company. The contract was specific to Weiss's services. Eliassen retained a portion of the money that Loomis paid for Weiss's services, and paid the rest to JoSol, Inc., an S corporation that Weiss wholly owned and controlled. Weiss received compensation for the services he provided to Loomis by drawing a salary from JoSol. He had formed JoSol one year before he began working for Loomis.

Throughout the case, Loomis's principal defense was that Weiss could not maintain an action pursuant to the statute because it obtained Weiss's services through two legitimate business-to-business relationships, its own relationship with Eliassen, and Eliassen's relationship with JoSol. According to Loomis, either of those relationships on its own precluded Weiss from bringing a misclassification claim and, taken together, they made it doubly clear that Weiss lacked standing. Indeed, Loomis argued that because both Eliassen and JoSol independently existed prior to its contracting for Weiss's services, Weiss could not demonstrate his standing as a matter of law.

After Weiss rested his case at trial, a Superior Court judge allowed Loomis's motion for a directed verdict. Passing

over Loomis's argument that Weiss lacked standing, the judge concluded that Weiss's misclassification claim failed as a matter of law on the merits. Judgment entered in Loomis's favor, and Weiss appealed. In a published opinion, this court reversed the judgment and remanded for a second trial. Weiss v. Loomis, Sayles & Co., 97 Mass. App. Ct. 1, 10 (2020) (Weiss I). Along the way, we considered whether Weiss lacked standing, an argument Loomis had put forward as a potential alternative ground for affirming the judgment. Id. at 6-7. The court concluded, albeit without lengthy discussion, that Weiss had presented sufficient evidence to send the standing issue to the jury. Id. at 7.

On remand, the same judge presided at the second trial. She provided the parties extensive opportunities to frame the jury instructions and verdict slip. Unsurprisingly, Weiss favored language that sought to minimize the role that Eliassen and JoSol played in the relationship that he had with Loomis, while Loomis did the opposite. Weiss argued that he had standing to bring a misclassification claim if Loomis "used" Eliassen and JoSol to avoid classifying him as an employee, regardless of whether Loomis had played a role in "creating" those intermediaries. Based on this, Weiss argued that the jury should be instructed that standing existed where an employer "created or used" intermediaries to evade the statute. Loomis

countered that the jury should be instructed that standing existed only if it had "created <u>and</u> maintained" Elliassen and JoSol to evade the statute.  By using "and" instead of "or," Loomis sought to convey that standing could not exist unless it had been involved in the creation of the intermediaries.[4]  As is discussed in detail below, the final jury instructions on standing, set forth in the margin, were consistent with Weiss's position on that issue.[5]

---

[4] Although the parties initially differed on whether "used" or "maintained" should be used, Weiss signalled that "maintained" was acceptable, and the parties ended up treating the words as equivalent.  Their debate thus crystallized about whether the terms "created" and "used" (or "maintained") should be linked by an "and" or an "or."

[5] The full instructions on standing were as follows:

"Standing.  The misclassification statute seeks to protect individual workers who provide services.  For this reason legitimate independent contractor and business-to-business relationships may be excluded from potential liability under this law.

"As the plaintiff it is Mr. Weiss's burden to prove by a preponderance of the evidence that the law applies to him for purposes of the software engineering services he performed at Loomis, the law calls this requirement standing.

"It is for you, the jury, to determine under all of the factual circumstances presented whether Mr. Weiss has met this burden.

"If a business is created and maintained in order to avoid the misclassification law and to avoid its protections for employees, then it is not a legitimate business.

The phrasing of the verdict slip followed a somewhat more complicated path.  By the sixth day of trial, the judge had signalled her intention that the verdict slip be worded consistent with Weiss's position that standing turned on whether Loomis had "created or used" Eliassen and JoSol to evade the statute.  Loomis vigorously objected and reiterated its position that "created and maintained" should be used instead.  At the

---

"Similarly, if a company requires a worker to set up a separate business in order to provide his services to the company, then that requirement means the separate business is not a legitimate business.

"In other words, the fact that Loomis obtained Weiss's services through a contract with a legitimate staffing company does not automatically make the statute inapplicable.

"An employer may not insulate itself from liability for misclassification by causing or creating another entity to contract with its employees, nor may an employer use contractual arrangements with third parties as an end run around the statute.

"Factors that you may consider in assessing the relationship of the three businesses, Loomis, Eliassen, and JoSol at issue here include whether the services that Eliassen provided or the services that JoSol provided were available to clients other than Loomis, whether the business of Loomis is different from or the same as the services performed by JoSol, and whether Eliassen and JoSol operated as business entities on their own initiative or because Loomis required them to do so.

"These factors are not exhaustive.  In order to determine whether Mr. Weiss's use of JoSol and Eliassen was his own decision or forced upon him by Loomis to misclassify him, you may consider any evidence you have heard in the case."

end of a lengthy discussion, the judge stated that Loomis had persuaded her. The judge then called a break in the proceedings so that the "created and maintained" language could be substituted for "created or used" in her working version of the verdict slip. After reviewing the edited version, both sides reported to the judge that she had made the change that she said she would make. The judge then provided the verdict slip to the jury in the form set forth in the margin.[6]

Lost in the moment was the fact that the verdict slip in fact had two parts: one that provided a shorthand summary of the standing issue in the form of a question, and another that provided the jury potential answers to that question. In her edited version, the judge had changed "created or used" to "created and maintained" in the first portion, but not in the second. As a result, the portion of the verdict slip that the jury were asked to complete distinguished between "business relationships" that were "legitimate," and those that instead

---

[6] "STANDING

1. Did Joel Weiss provide services to Loomis through
   legitimate business-to-legitimate business relationships
   with either Eliassen or JoSol, or were those businesses
   created and maintained for purposes of misclassification
   of Mr. Weiss?

     YES, legitimate business relationships _____

     NO, _____ was created or used for purposes of
   misclassification."

were "created or used for purposes of misclassification." That language was fully consistent with Weiss's position on the underlying law.

Overnight, counsel for Loomis noticed the inconsistency and brought it to the judge's attention the following day. Because the jury were still deliberating, Loomis urged the judge to correct the problem and to provide the jury with a new version of the verdict slip. Weiss vigorously opposed that proposal, arguing that it was too late to switch gears and that, in any event, the "created or used" phrasing should not be changed because it was, in fact, correct. While indicating that she disagreed with Weiss on the merits of that issue, the judge decided to let the internally inconsistent version of the verdict slip stand.

The jury ultimately answered the standing question in Loomis's favor, and judgment accordingly entered that Weiss would "take nothing."

Discussion. On appeal, Weiss principally challenges the wording of the special verdict slip. The thrust of his argument is that the "created and maintained" language communicated to the jury that they were required to rule in Loomis's favor on standing unless Loomis had created both Eliassen and JoSol as a means of evading the statute. Because it was always undisputed that both intermediary entities already independently existed by

the time Loomis sought Weiss's services, Weiss maintains that the net effect of how the verdict slip was phrased was to compel a jury verdict in Loomis's favor on standing.[7]

The underlying legal question that the parties debated and continue to debate is whether a worker could have standing to bring a misclassification claim where the putative employer did not itself create, or compel the creation of, intermediary entities through which the worker nominally provided his services. Both sides are armed with nontrivial arguments in their favor. Loomis argues that if a worker is nominally employed by an independently created staffing firm, such as Eliassen, with which it has contracted for services, its relationship with that firm is a "legitimate business relationship" that precludes the worker's standing. Loomis also points to the use of the "created and maintained" language in Chambers and its progeny. In Chambers, for example, the court noted with apparent approval, that the Attorney General has taken the position that the presence of intermediary entities that are "'created and maintained in order to avoid [application

---

[7] Weiss argued to the judge that the phrasing of the verdict slip was at odds not only with Chambers and other precedent from the Supreme Judicial Court, but also with our opinion in the earlier appeal in this very case. After all, Weiss argued, that opinion had rejected Loomis's argument that it should prevail on standing as a matter of law. See Weiss I, 97 Mass. App. Ct. at 7.

of the independent contractor statute]' would not immunize employers against enforcement."  Chambers, 476 Mass. at 109.

For his part, Weiss argues that even if the timing of when an intermediary entity was formed is a relevant factor for determining whether a business relationship the employer forged with it should be considered "legitimate," that should not, by itself, be outcome determinative.  Put differently, Weiss argues that if a worker is able to make a case that an employer used an intermediary entity to evade the protections offered by the statute, the worker should not be barred from having a jury reach the merits solely because the intermediate entity happened to have been formed prior to the employer's pursuit of the worker's services.  That interpretation, he maintains, is more consistent with the broad remedial purposes that the statute serves.  See Depianti, 465 Mass. at 620, quoting Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985) ("remedial statutes such as the independent contractor statute are 'entitled to liberal construction'").  And Weiss accurately points out that while Chambers and subsequent cases do state that standing exists when the employer "created and maintained" the intermediary entity to evade the statute, they do not hold

that standing necessarily is lacking if that condition was not satisfied.[8]

Even assuming that Weiss is correct as to the broad legal principle, in light of the circumstances, his position is not advanced as a practical matter.  It is Weiss's burden to demonstrate that the trial necessarily was infected with reversible error and, for the reasons that follow, he cannot meet that burden.  Before turning to Weiss's specific arguments regarding the verdict slip, we first examine the jury instructions, which frame how the verdict slip is to be viewed.

The judge's instructions on standing were extensive, encompassing two full pages of transcript.  Even putting aside that instructions are to be viewed as a whole, see Ventresco v. Liberty Mut. Ins. Co., 55 Mass. App. Ct. 201, 206 (2002), nothing in the instructions stated that Weiss had standing only if Loomis created Eliassen and JoSol.  The instructions

---

[8] Loomis relies, in part, on a case that postdates Weiss I, Jinks v. Credico (USA) LLC, 488 Mass. 691 (2021).  In Jinks, supra at 693, the workers were directly employed by a subcontractor of the defendant.  Along the way to ruling in the defendant's favor, the court ruled that, as a matter of law, there was insufficient evidence that the subcontractor had been "set up by [the defendant] for the purposes of evading wage law obligations."  Id. at 698.  While the analysis in Jinks arguably provides some support for Loomis's legal arguments to us, there are notable differences in context that prevent it from being directly on point.  For example, while the workers in Jinks serviced the defendant's clients, the record established that on a day-by-day basis, they worked directly for the subcontractor. Id. at 693-694.

indicated that while the roles played by Eliassen and JoSol raised a question about whether Weiss had standing, this was not by itself preclusive, and the jury were required "to determine under all of the factual circumstances presented whether Mr. Weiss ha[d] met th[e] burden [of demonstrating his standing]." The instructions provided two examples of where a worker would have standing to bring a misclassification claim even if the worker had nominally been employed by an intermediary firm. One example was where the employer "created and maintained" the intermediary to evade the statute, and the other was where the employer required the worker to "set up" the intermediary.[9] Although both examples involved situations where the employer played a direct role in creating or requiring the creation of the intermediary, nothing in the instructions stated that standing was absent unless that condition were satisfied.[10] To

---

[9] The examples were drawn directly from case law. See Jinks, 488 Mass. at 698; Chambers, 476 Mass. at 109.

[10] We note a small patent misstatement in both examples. The language used there focused on whether the intervening firm was a "legitimate business." In Chambers, the adjective "legitimate" modifies "business-to-business relationship," not "business." Chambers, 476 Mass. at 109. See also Jinks, 488 Mass. at 698 (on illegitimacy of "employment relationship"). This distinction potentially matters because even a "legitimate business" presumably could participate in a business relationship that was illegitimate. No objection to this particular phrasing was preserved. Nor did Weiss object to the fact that the verdict slip referred to "legitimate business-to-legitimate business relationships."

the contrary, another passage in the instructions stated that standing would exist where employers "use contractual arrangements with third parties as an end run around the statute" (emphasis added).

Put succinctly, Weiss prevailed in his efforts to have the jury instructions incorporate his position that the pre-existence of the intermediary entities did not bar his standing. Accordingly, it is hardly surprising that on appeal, Weiss makes only a limited challenge to the instructions. Specifically, he claims error only with regard to some of the nonexclusive factors that the judge invited the jury to consider during its standing deliberations. Chambers includes a brief discussion of such factors; for example, Chambers spoke approvingly of the fact finder's being able to consider whether "the services of the alleged independent contractor are not actually available to entities beyond the contracting entity, even if they purport to be so." Chambers, 476 Mass. at 109. As the transcript in the case before us makes clear, the judge sought to take the specific factors mentioned in Chambers and adapt them to the facts here. Thus, she purported to incorporate the specific factor just quoted, but in doing so substituted Eliassen for "alleged independent contractor." Weiss objected to that substitution on the ground that, in using the term "alleged independent contractor," the Supreme Judicial Court plainly was

referring to the individual worker who was bringing the claim, not the intermediary entity that nominally hired him.  We agree with Weiss's premise that whether the intervening entity serviced clients other than the employer being sued was not one of the factors that the Chambers court specifically endorsed in its standing analysis.  However, it does not follow that the judge necessarily erred in instructing the jury that they could consider that factor.[11]  Turning to the merits of that issue, we discern no error in the judge's inviting the jury to consider whether Eliassen serviced clients other than Loomis, or otherwise existed independent of Loomis's relationship with Weiss.  While such considerations may not be dispositive on their own, we agree with Loomis that they are highly relevant to whether the relationship between a putative employer and a staffing firm that it used was "legitimate," as opposed to one that was being called upon to evade the statute.  In sum, because the jury instructions on standing in fact incorporated

---

[11] Nothing in Chambers suggests that the referenced considerations -- which are drawn from a manual issued by the Attorney General -- establish critical factors that must be conveyed to the jury verbatim.  To the contrary, the court declared the factors "nonexhaustive" and, immediately after referencing them, the court sought to distill them into what might be described as a performance standard:  "whether the worker's use of the corporate form was at the worker's behest or forced upon the worker by an employer in order to misclassify [the worker]."  Chambers, 476 Mass. at 109.  In their final paragraph, the jury instructions here incorporated that performance standard almost word for word.

Weiss's position that the independent existence of Eliassen and JoSol was not by itself preclusive, he is unable to demonstrate error in those instructions.

We now turn back to Weiss's claims regarding the verdict slip, which, as noted, are based on the fact that the judge inserted Loomis's "created and maintained" language into the verdict slip just before sending it to the jury. By distinguishing between "business relationships" that were "legitimate" from those where the corporate form was "created and maintained" to evade the statute, that language could be taken to suggest that Weiss was barred from demonstrating standing solely because Eliassen and JoSol already existed when Loomis contracted for his services. Thus, if viewed in isolation, this language could be seen as being inconsistent with Weiss's position that the independent existence of the intermediaries was not by itself preclusive. However, as noted, as a result of an inadvertent oversight, the portion of the verdict slip that the jury were asked to complete retained Weiss's favored "created or used" formulation. A verdict slip is to be viewed in light of the attendant circumstances, including the instructions the jury were given. Even in the context of criminal cases, problems in the wording of a verdict slip can be rendered inconsequential by proper instructions which, after all, the jury are presumed to follow. See

<u>Commonwealth</u> v. <u>Evans</u>, 42 Mass. App. Ct. 618, 626-627 (1997)
(omission of language from verdict slip that crime was for
breaking and entering dwelling "with the intent to commit a
felony" held inconsequential where, in light of circumstances,
including proper jury instructions, there was "no likelihood
that the jurors could have been misled or confused by the
omission of the language").  As it materialized, any problem at
issue here is not a conflict between the verdict slip and the
jury instructions, but rather an arguable internal inconsistency
within the language of the verdict slip.[12]  Because we presume
that the jury followed the instructions they were given, see
<u>Kelly</u> v. <u>Foxboro Realty Assocs., LLC</u>., 454 Mass. 306, 314
(2009), this means that we presume they would have resolved that
inconsistency by following the instructions that they had been
given, which incorporated Weiss's legal position.

---

[12] Weiss does not complain that the verdict slip contained
an inconsistency, and, in any event, he invited that error when
he urged the judge not to correct the problem.  To be sure,
Weiss preserved his objection to the "created and maintained"
language by making his opposition to that language abundantly
plain to the judge.  However, his strategic decision to have the
"created or used" language also remain in the verdict slip had
the effect of undercutting his ability to claim prejudice.  We
discern no inequity in this result:  Weiss hoped that the jury
would use his "created or used" language and it may well be that
this is exactly what they did.  Cf. <u>Cowher</u> v. <u>Kodali</u>, 283 A.3d
794, 804 (Pa. 2022) (plaintiff cannot claim error where
prejudice could not be determined based on form of verdict slip
that went to jury with his approval).

For related additional reasons, Weiss cannot establish that he was prejudiced.  We recognize that where a claim of instructional error has been preserved, the cases indicate that a new trial is warranted where the "result might have differed absent the error" (citation omitted).  Kelly, 454 Mass. at 313.  However, despite the use of the word "might," this test requires more than a theoretical possibility that an error led to the jury's ruling in Loomis's favor.  We are confident that the jury's verdict that Weiss lacked standing did not turn on the fact that in one portion of the verdict slip, the words "created" and "maintained" were joined by "and" instead of "or."  In this regard, we note that while Weiss presented sufficient evidence to send the standing issue to the jury -- as this court ruled in the earlier appeal -- Loomis's fact-based arguments that Weiss lacked standing were always quite strong.  With Weiss by his own choice nominally employed by JoSol,[13] an entity that Weiss created without Loomis's involvement, and with Loomis's contracting for Weiss's services through Eliassen, a staffing firm that long had existed independent of Loomis, Weiss faced an uphill battle on standing from the start.

---

[13] Weiss was given the option of being hired directly by Eliassen and chose instead to operate as an independent contractor through JoSol for reasons of his own and for his own benefit.

In the end, any problem that Weiss has identified in the wording of the verdict slip is simply too slender a reed to support his claimed entitlement to a third trial.  In the context of criminal prosecutions, it often has been said that "[a] defendant is entitled to a fair trial but not a perfect one."  Commonwealth v. Mienkowski, 91 Mass. App. Ct. 668, 678 (2017), quoting Commonwealth v. Graves, 363 Mass. 863, 872 (1973).  The admonition applies with even more force to litigants in civil cases.

Judgment affirmed.